UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
NAFEESAH HINES,

                Plaintiff,

      -against-

HSBC BANK USA as Trustee for Ace Securities
Corp. Home Equity Loan Trust Series 2006-OP1
Asset Back Pass Through Certificates and
CLARFIELD OKON SALOMONE & PINCUS,
PL,

                Defendants.
-------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-3082 (CBA) (MDG)

**AMON, United States District Judge:**

Plaintiff Nafeesah Hines brings this action against HSBC Bank USA ("HSBC"), Ocwen

Loan Servicing, LLC ("Ocwen"), and Clarified Okon Salomone & Pincus, PL,[1] alleging violations

of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the

implementing regulations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.

§ 2601 et seq. She also brings claims of intentional infliction of emotional distress ("IIED") and

negligent infliction of emotional distress ("NIED") under New York common law. HSBC and

Ocwen (collectively, "defendants") now move to dismiss the amended complaint pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that Hines's amended

complaint should be dismissed because: (1) the Court lacks subject matter jurisdiction over Hines's

suit under the Rooker-Feldman doctrine; (2) Hines's claims are barred by the doctrine of res

judicata; (3) Hines's claims are untimely; and (4) Hines failed to state a claim on which relief may

be granted. For the reasons set forth below, defendants' motion is granted in part and denied in

part.

---

[1] Defendant Clarfield Okon Salomone & Pincus, PL, has not yet appeared or otherwise defended this action and does
not join the instant motion.

1

## BACKGROUND[2]

### I. Hines's Mortgage Loan and New York State Foreclosure Proceedings

On January 18, 2006, Hines obtained a mortgage loan in the original principal amount of $408,000 (the "loan"). (Am. Compl. ¶ 27.) The mortgage was executed in favor of Option One Mortgage Corporation, who is not a party to the instant action. (Id.)

Following Hines's default in payments on the mortgage loan in August 2006, (id. ¶ 28), HSBC, the subsequent owner of the loan, commenced a foreclosure action against Hines in the New York Supreme Court, Queens County, on November 8, 2006 (the "foreclosure action"). (See id. ¶ 33; D.E. # 42-2 ("Broderick Decl.") ¶ 3, Ex. 1.) Hines opposed the foreclosure action, filing an answer, an amended answer, and a memorandum of law in opposition to HSBC's motion for summary judgment. (Broderick Decl., Exs. 2–3, 5.) The New York Supreme Court granted HSBC's motion for summary judgment, and on August 24, 2007, issued a Judgment of Foreclosure and Sale in favor of HSBC (the "state court judgment"). (See Broderick Decl., Ex. 4 ("Judgment of Foreclosure and Sale").) The state court judgment stated that, as of June 12, 2007, Hines owed HSBC the amount of $436,743.72 plus per diem interest. (Am. Compl. ¶ 42.) However, the execution of the state court judgment was forestalled by five subsequent motions—two in direct violation of the state court's orders—by Hines seeking vacatur of the state court judgment and dismissal of the action. (See Broderick Decl., Ex. 5.)

---

[2] The following facts are drawn primarily from the amended complaint and are deemed true for purposes of this motion. The Court has also considered documents attached to the amended complaint, as well as those incorporated by reference into or integral to the complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The Court also takes judicial notice of state court and other filings submitted by both parties in this action, as matters of public record. See Ward v. Bankers Trust Co. of California, No. 09-CV-1943 (RRM) (LB), 2011 WL 1322205, at *1 (E.D.N.Y. Mar. 29, 2011) (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998)); see also Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006) ("'[In deciding a motion to dismiss,] [a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998))).

In the course of that motion practice, Hines challenged HSBC's standing to foreclose; alleged that HSBC was not the holder of the note and mortgage; argued that the judgment was not supported by the evidence; and identified various purported procedural deficiencies in HSBC's filings. (Id. at 2–3.) The state court not only denied all of Hines's motions as meritless but also sanctioned Hines on March 30, 2009, for "frivolous conduct" and "engaging in vexatious litigation undertaken to delay or prolong the resolution of this litigation" and barred her from any further filings related to the foreclosure action. (Id. at 4–5.)

## II. Defendants' Efforts to Collect

In 2013, Hines began receiving notices and statements from Ocwen regarding her debt. (Am. Compl. ¶ 43.) Hines claims, upon information and belief, that Ocwen has been the servicer of Hines's debt since that time. (Id. ¶ 44.) Throughout 2014 and 2015, Ocwen sent Hines "notices or monthly statements demanding payment of the debt." (Id. ¶ 45; see also id., Exs. B–D.) Hines claims that these collection notices contain false representations of the outstanding principal balance and amount due on her debt because they include unauthorized charges, interest, and fees. (Id. ¶¶ 47–49.) The purported unauthorized charges on her account include force-placed hazard insurance, (id. ¶¶ 54–59), and amounts arising from HSBC and Clarfield's notice of sale, (id. ¶ 60). Hines also alleges that the collection notices contain conflicting representations of the amount due on her debt. (Id. ¶ 50.) Finally, Hines claims that the collection notices included false, misleading, and deceptive statements regarding the alleged creditor. (Id. ¶ 71(b).) She contends that, upon information and belief, all of Ocwen's actions were taken "at the direction of or on behalf of HSBC." (Id. ¶ 61.)

### III. Procedural Background

Hines, initially proceeding pro se, filed the instant action on May 27, 2015. (D.E. # 1.) HSBC filed a motion to dismiss Hines's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6) on September 18, 2015. (D.E. # 23.) Hines—then represented by counsel—did not timely serve HSBC, nor did she respond to HSBC's letter dated September 17, 2015, informing the Court that no opposition had been received and asking the Court to consider the motion fully briefed. (D.E. # 22.) Hines never sought an extension of time or otherwise contacted the Court to explain this omission.

Instead, on October 6, 2015, Hines requested leave to file an amended complaint, neither attaching a proposed amended complaint nor otherwise explaining the contents of the proposed amendments. (D.E. # 27.) HSBC did not consent to this request and, indeed, vigorously opposed it, arguing that Hines's request to amend was merely the latest in a long series of frivolous attempts to perpetuate litigation of the underlying foreclosure action. (D.E. # 28.) At a telephone conference held before the Court on October 22, 2015, the Court ordered Hines to submit her outstanding opposition and indicated that Hines's request to amend would be entertained in conjunction with a merits determination on HSBC's pending motion to dismiss. (D.E. dated Oct. 22, 2015.) Oral argument on HSBC's motion to dismiss was held on January 29, 2016. (D.E. dated Jan. 29, 2016.) Decision on HSBC's motion was reserved, and Hines was granted leave to file an amended complaint. (Id.)

### IV. Hines's Amended Complaint

Hines filed an amended complaint on February 8, 2016, bringing claims under the FDCPA, New York common law, and RESPA. (See Am. Compl.) The Court construes the amended complaint to raise two general categories of FDCPA claims: (1) claims attacking the legitimacy of

4

the state court judgment (the "foreclosure-related claims"), and (2) claims alleging misconduct by defendants in attempting to collect the debt owed as a result of the state court judgment (the "collection-related claims"). The foreclosure-related claims include both explicit and implicit challenges to HSBC's standing to foreclose. (Am. Compl. ¶¶ 36–38, 71(g), 71(k)–(l).) Hines also disputes whether any debt is owed and, if so, whether HSBC lawfully owns the debt. (Id. ¶¶ 29–31.)

In the collection-related claims, Hines alleges that defendants have violated the FDCPA through their efforts to collect the debt owed as a result of the state court judgment. First, Hines alleges that defendants sent her collection notices containing false, misleading, and deceptive statements in violation of sections 1692e and 1692f of the FDCPA ("false-statement claims"). The false and misleading statements allegedly contained in the collection notices fall into four categories: (1) conflicting representations of the amount due, (id. ¶ 50); (2) unauthorized fees and charges to the outstanding principal balance and amount due, (id. ¶¶ 47–51), particularly charges for hazard insurance for her home, (id. ¶¶ 53–58, 71(e)), and charges for the notice of foreclosure sale, (id. ¶¶ 59–60); (3) interest in an amount different from that provided in the promissory note to the outstanding principal balance and amount due, (id. ¶ 71(f)); and (4) false, misleading, and deceptive statements regarding the creditor, (id. ¶ 71(b)).

The amended complaint includes three other collection-related claims under the FDCPA. First, Hines claims that HSBC's assignment of her mortgage loan to Ocwen without her consent or authority from a court of competent jurisdiction violated section 1692c of the FDCPA. (Id. ¶¶ 37, 40.) Second, Hines claims that defendants violated section 1692e by providing false information to consumer credit reporting agencies ("CRAs") regarding the amount of Hines's debt and failing to report to CRAs that the debt was disputed. (Id. ¶¶ 52, 71(c).) Third, Hines contends

that defendants failed to respond to a "Notice of Dispute" sent by Hines on March 20, 2015, seeking verification of the debt, as required by section 1692g (the "notice-of-dispute claim"). (Id. ¶¶ 62–67, 71(h).) As a result of these alleged violations of the FDCPA, Hines seeks actual and statutory damages, costs and reasonable attorney's fees, and declaratory and injunctive relief. (Id. ¶¶ 72–78.)

In addition to these FDCPA claims, Hines also brings claims of IIED and NIED under New York common law. (Id. ¶¶ 79–90.) She claims that "[t]he actions of Defendants . . . have resulted in Ms. Hines being threatened with the sale of the Property" and that defendants lack any right or privilege to threaten this sale. (Id. ¶¶ 80–82, 86–88.) As a result of these alleged violations, Hines seeks punitive damages. (Id. ¶¶ 84, 90.)

Finally, Hines claims that defendants violated RESPA because they did not provide Hines with any of the information or requests required by the regulations prior to charging her account for force-placed insurance. (Id. ¶¶ 91–98.)

## STANDARD OF REVIEW

Defendants seek dismissal of Hines's amended complaint on two grounds: lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim on which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. In determining whether subject matter jurisdiction exists, the court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the

6

plaintiff." Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). The court may also consider evidence from beyond the complaint, "presented by affidavit or otherwise." Ireland v. Suffolk Cty. of New York, 242 F. Supp. 2d 178, 185 (E.D.N.Y. 2003) (quoting Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

Rule 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." To avoid dismissal, a plaintiff must state a claim that is "plausible on its face" by alleging sufficient facts to enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must accept all factual allegations in the complaint as true, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. In considering a motion to dismiss for failure to state a claim, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint. Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Id.

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds . . . the Court must consider the Rule 12(b)(1) motion first." Niles v. Wilshire Inv. Grp., LLC, 859 F. Supp. 2d 308, 332 (E.D.N.Y. 2012) (quoting Bobrowsky v. The Yonkers Courthouse, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011)); see Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) ("We determine the existence of subject matter jurisdiction before addressing other threshold issues."), aff'd, 133 S. Ct. 721 (2013).

## DISCUSSION

### I.  Subject Matter Jurisdiction Over Hines's FDCPA Claims

The Court first considers HSBC's argument that Hines's claims should be dismissed under Rule 12(b)(1) because this Court lacks subject matter jurisdiction to adjudicate any FDCPA violation arising from the foreclosure action under the Rooker-Feldman doctrine.  (D.E. # 35 ("Defs. Mem.") at 3–6.) The Court agrees that Rooker-Feldman at least partially precludes Hines's claims.

#### A. The Rooker-Feldman Doctrine

The Rooker-Feldman doctrine "bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments.'" Sykes v. Mel S. Harris & Assocs. L.L.C., 780 F.3d 70, 94 (2d Cir. 2015) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). For the Rooker-Feldman doctrine to apply, (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court

judgment must have been rendered before the district court proceedings commenced." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

Rooker-Feldman precludes federal district courts from exercising jurisdiction over not only claims that were actually litigated in state court, but also those claims that are "'inextricably intertwined' with state court determinations." Kropelnick v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002) (quoting D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482–83 n.16 (1983)). "A claim is inextricably intertwined under Rooker-Feldman when 'at a minimum, . . . a federal plaintiff had an opportunity to litigate a claim in a state proceeding . . . [and] the claim . . . would be barred under the principles of preclusion.'" Id. (quoting Moccio v. N.Y. State Office of Court Admin., 95 F.3d 195, 199–200 (2d Cir. 1996)). "Moreover, if adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or void, the claim is inextricably intertwined with the merits of the state court judgment." Id. "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine." Feinstein v. The Chase Manhattan Bank, No. 06-CV-1512 (JFB) (ARL), 2006 WL 898076, at *2 (E.D.N.Y. Apr. 5, 2006) (collecting cases).

## B. Claims Barred By Rooker-Feldman

Here, Hines's claims are at least partially barred by Rooker-Feldman. First, Hines lost in state court, as evidenced by the state court judgment. (Judgment of Foreclosure and Sale.) Second, the civil judgment, entered in August 2007, (see id.), was rendered nearly eight years before Hines filed this action on May 27, 2015, (see D.E. # 1). Finally, at least some of Hines's claims complain of injuries caused by the state court judgment and invite this Court's review and rejection of that judgment—specifically, the foreclosure-related claims. The foreclosure-related claims

fundamentally challenge the legitimacy of the state court judgment, including by contesting the authenticity of the underlying debt instruments and HSBC's status as a creditor.

With respect to these claims, the state court judgment was plainly a cause of Hines's injuries, and this Court would necessarily have to review the state court judgment to adjudicate these claims. See Craig v. Saxon Mortgage Servs., Inc., No. 13-CV-4526 (SJF) (GRB), 2015 WL 171234, at *8 (E.D.N.Y. Jan. 13, 2015) ("To the extent plaintiff's FDCPA claims are attempts to challenge the state court's Judgment of Foreclosure and Sale, the validity of the mortgage documents underlying the Judgment of Foreclosure and Sale, and/or defendants' standing to commence the State Court Foreclosure action . . . they are . . . barred by the Rooker-Feldman doctrine."); see also Quiroz v. U.S. Bank Nat. Ass'n, No. 10-CV-2485 (KAM) (JMA), 2011 WL 3471497, at *4 (E.D.N.Y. Aug. 5, 2011) (concluding that Rooker-Feldman barred FDCPA claim arising from state mortgage foreclosure proceedings where plaintiffs alleged that "the debt being collected was false").

Rooker-Feldman therefore bars Hines's foreclosure-related claims, and those claims are dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.[3] See Kropelnicki v. Siegel, 290 F.3d 118, 128–29 (2d Cir. 2002) (concluding that Rooker-Feldman barred FDCPA claims that were "inextricably intertwined" with prior state court debt collection proceedings); see also Craig,

---

[3] Even if these claims were not barred by Rooker-Feldman, the Court agrees with defendants that to the extent Hines challenges HSBC's status as a debtor or the amount due under the state court judgment, the doctrine of res judicata bars those claims. (See Defs. Mem. at 6–7). Res judicata bars subsequent litigation if: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y.C. Dep't of Corrs., 214 F.3d 275, 285 (2d Cir. 2000). To the extent Hines challenges the merits of the foreclosure action or the amounts due under the resulting judgment, those claims were or could have been litigated in the state court action and are therefore barred by res judicata. See Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 351–52 (E.D.N.Y. 2010) (concluding that FDCPA claims arising from state court action were not only barred by Rooker-Feldman but were also precluded by doctrine of res judicata).

2015 WL 171234, at *8 (dismissing FDCPA claims arising from state foreclosure action for lack of subject matter jurisdiction); Quiroz, 2011 WL 3471497, at *4 (same).

### C. Claims Not Barred By Rooker-Feldman

Hines's collection-related claims, however, are not barred by Rooker-Feldman. Those claims assert that defendants violated various provisions of the FDCPA in the course of attempting to collect the debt owed under the state court judgment by, for example, sending collection notices with false and misleading statements, (Am. Compl. ¶¶ 47–51, 53–60), failing to respond to Hines's request for verification of the debt, (id. ¶¶ 62–67), or communicating false information about the debt to CRAs, (id. ¶ 52). Because those claims concern conduct by defendants after the state court judgment was rendered, Hines did not have an opportunity to litigate them in the foreclosure action. See Kropelnicki, 290 F.3d at 120–30 (concluding that Rooker-Feldman did not bar some of plaintiff's FDCPA claims because they arose from creditor's collection actions after state court judgment was rendered). Moreover, the collection-related claims allege injuries caused not by the state court judgment itself but by defendants' alleged misconduct in attempting to collect under that judgment. See Sykes, 780 F.3d at 94–95 (affirming district court's conclusion that Rooker-Feldman did not bar FDCPA claims that "sp[oke] not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments"); see also Lautman v. 2800 Coyle Street Owners Corp., No 14-CV-1868 (ARR) (VVP), 2014 WL 4843947, at *6–7 (E.D.N.Y. Sept. 26, 2014) (concluding that Rooker-Feldman did not bar FDCPA claims arising from litigation misconduct in underlying state court proceedings because the alleged harms were "not caused" by the state court's rulings).

Accordingly, the Court concludes that it has subject matter jurisdiction over Hines's collection-related claims and denies defendants' motion to dismiss these claims under Rule 12(b)(1). The Court considers defendants' remaining arguments with respect to those claims only.

## II.  Sufficiency of the Allegations Under the FDCPA

The only FDCPA claims over which this Court may exercise subject matter jurisdiction are the collection-related claims, which assert that defendants have violated the FDCPA in the course of attempting to collect the debt owed by Hines under the state court judgment. Defendants move to dismiss these remaining claims under Rule 12(b)(6). They contend that Hines has failed to state a claim under the FDCPA for injunctive and declaratory relief. Defendants also argue that Hines's claims for damages should be dismissed as time-barred or, alternatively, for failure to state a claim on which relief may be granted.

### A.  Claims For Injunctive Relief

As a preliminary matter, the Court addresses defendants' argument that Hines has failed to state a claim for declaratory and injunctive relief under the FDCPA. Hines's amended complaint seeks declaratory and injunctive relief for defendants' alleged FDCPA violations, (Am. Compl. ¶¶ 79–84), but the FDCPA does not contain an express provision for these types of relief, see Hecht v. United Collection Bureau, Inc., 691 F.3d 218, 224 n.1 (2d Cir. 2012) ("While the FDCPA explicitly provides for money damages, it does not provide for injunctive relief in private actions."). Although the Second Circuit found that the issue of whether the FDCPA permits private litigants to seek injunctive relief was not squarely presented in Hecht, and therefore not decided, it noted that every federal appeals court that had decided the issue had held that it does not. Id. (collecting cases). Moreover, other district courts in the Second Circuit have held that private litigants are not entitled to declaratory or injunctive relief on FDCPA claims. See, e.g., Anthony

12

v. Fein, Such & Crane, LLC, No. 15-CV-00452 (DNH) (TWD), 2015 WL 7749894, at *3–4 (N.D.N.Y. Sept. 22, 2015), report and recommend. adopted, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015) ("[P]rivate litigants are not entitled to declaratory and injunctive relief on FDCPA claims."); Milton v. Rosicki, Ricki & Assocs., P.C., No. 02-CV-3052 (NGG), 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007) (same). Because the FDCPA does not provide for this relief to private litigants, the Court accordingly dismisses Hines's claims for declaratory and injunctive relief under the FDCPA.

### B. Statute of Limitations

Defendants contend the Court should dismiss the rest of Hines's collection-related claims as time-barred. (Defs. Mem. at 7.) "[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014). "Of course, a defendant presenting an [affirmative defense] on a Rule 12(b)(6) motion . . . must accept the more stringent standard applicable to this procedural route," and "[t]he motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (internal quotation marks and citation omitted); see also Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999) (at the pleading stage, dismissing claims as time-barred is "appropriate only if a complaint clearly shows the claim is out of time").

### 1. Notice-of-Dispute Claim

Defendants contend that Hines's notice-of-dispute claim under section 1692g fails because Hines did not timely dispute the debt under 15 U.S.C. § 1692g(b). (Defs. Mem. at 8–9.) The FDCPA provides that "[w]ithin five days after the initial communication in connection with the

collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice," often referred to as a validation notice, containing the following information:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). The FDCPA further provides that if the "consumer notifies the debt collector in writing within the thirty-day period" provided for in section 1692g(a) that he or she disputes the debt, "the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector." Id. § 1692g(b).

The amended complaint alleges that "[o]n March 20, 2015, Ms. Hines served a Notice of Dispute pursuant to § 1692g(b) on Clarfield, directly and as the debt collection attorneys for HSBC," and that defendants did not adequately respond to this notice. (Am. Compl. ¶¶ 62–67.) However, Hines fails to plead any facts establishing when HSBC initially contacted her about the debt or when she received the validation notice; accordingly, she has not plead sufficient facts for the Court to conclude that her March 20, 2015, request for validation of the debt was timely and, therefore, that HSBC had any obligation to respond to her request.[4] See Craig, 2015 WL 171234,

---

[4] Defendants also refute this claim on the ground that Ocwen in fact responded to Hines's request for verification. (Def.'s Mem. at 8.) Defendants rely upon a copy of a letter from Ocwen to Hines dated April 9, 2015. (See Broderick Decl., Ex. 9.) The Court may not consider this argument, however, because the evidence defendants rely on is neither incorporated by reference in or integral to the amended complaint—this letter is not attached to Hines's amended complaint and the amended complaint does not rely upon its terms and effect. See DiFolco, 622 F.3d at 111.

at *8 (dismissing §1692g claim for failure to state a claim on which relief may be granted where plaintiff failed to identify when defendants' initial communication occurred (citing Burnett v. Mortg. Servs., Inc., 706 F.3d 1231, 1240–41 (10th Cir. 2013) (affirming dismissal of plaintiff's § 1692g claim which merely alleged that defendants never "gave any of the required notices" but pleaded no other facts in relation to that claim)).

Moreover, Hines alleges that she began receiving notices and statements from Ocwen regarding her debt in 2013. (Am. Compl. ¶ 43.) As a result, Hines's March 20, 2015, notice of dispute was necessarily more than thirty days after she received an initial communication regarding her debt. Hines's March 20, 2015, request for validation of the debt was thus untimely under § 1692g(b)—perhaps by a matter of years—and Hines has not plausibly alleged that defendants violated the FDCPA by failing to respond to her request for verification of the debt. Therefore, her notice-of-dispute claim and her related claims that HSBC violated the FDCPA by failing to notify credit reporting agencies that the debt was disputed are dismissed for failure to state a claim on which relief may be granted. See Agu v. Rhea, No. 09-CV-4732 (JS) (AKT), 2010 WL 5186839, at *5 (E.D.N.Y. Dec. 15, 2010) (concluding that if plaintiff's request for verification was untimely, defendants "properly ignored" that request and "had every right to continue reporting [p]laintiff's alleged debts" to reporting agencies (citing Jackson v. Genesys Credit Mgmt., No. 06-CV-61500, 2007 WL 2113626, at *3 (S.D. Fla. 2007) (absent timely request for verification under section 1692g(b), debt collector may continue reporting debt to credit agencies)).

### 2. Remaining FDCPA Claims

Defendants also move to dismiss Hines's remaining FDCPA claims as untimely. (Defs. Mem. at 7.) The statute of limitations for claims under the FDCPA is one year "from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Hines filed the instant action on May 27,

2015, and defendants argue that any conduct alleged prior to May 27, 2014, should consequently be dismissed as time-barred. (Defs. Mem. at 7.) However, it is not clear from the face of the amended complaint that Hines's remaining FDCPA claims are time-barred. To the contrary, the amended complaint suggests that certain of the alleged FDCPA violations are occurring as part of ongoing collection efforts by defendants.[5] Absent allegations as to the specific dates on which these alleged violations occurred, the Court is unable to determine at this juncture whether any of Hines's remaining FDCPA claims are untimely or whether any applicable tolling doctrines might preserve those claims. Accordingly, because the complaint does not "clearly show[] the claim is out of time," Harris, 186 F.3d at 250, the Court denies defendants' motion to dismiss Hines's remaining FDCPA claims as time-barred.

### C. Res Judicata and Collateral Estoppel

Defendants also contend that Hines's collection-related claims should be dismissed under the doctrines of res judicata and collateral estoppel. (Defs. Mem. at 6–7.) They argue that the allegations underlying Hines's FDCPA claims were already litigated and rejected in state court and that the state court judgment must be given preclusive effect in this action. (Id.)

Res judicata challenges "may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Thompson v. Cty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994). When a defendant raises res judicata as a defense and "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law," dismissal under Rule 12(b)(6) is appropriate. Conopco, Inc. v. Roll Int'l, 231 F.3d

---

[5] Defendants contend that "HSBC's only involvement [in this matter] was to proceed with the foreclosure action," and that only Ocwen's debt-collection activity after May 27, 2014 is at issue in this case. (Defs. Mem. at 7.) Therefore, according to defendants, all of the FDCPA claims against HSBC should be dismissed as time-barred. (Id.) However, Hines alleges in the amended complaint that "[u]pon information and belief, all of Ocwen's actions were taken at the direction of or on behalf of HSBC." (Am. Compl. ¶ 60.) Defendants do not respond to this assertion in their memorandum of law. The Court therefore cannot conclude at this stage in the litigation that HSBC did not undertake any collection activities during the statutory period.

82, 86 (2d Cir. 2000). Under the doctrine of res judicata, a plaintiff's claims are barred as a matter of law by a previous action where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (internal quotation marks and citations omitted). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Accordingly, New York law governs the preclusive effect of the state court judgment. New York law dictates that in deciding whether a claim is one that was or could have been raised in a prior action, the question is whether the claim "aris[es] out of the same transaction or series of transactions" involved in the prior action. Hameed v. Aldana, 296 F. App'x 154, 155 (2d Cir. 2008) (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (1981)).

Here, the requirements for res judicata are not met because Hines's collection-related claims were not, and could not have been, raised as claims or defenses in the state court action. As discussed above, Hines's collection-related claims are predicated on facts that occurred after the conclusion of the state court action—namely, the contents of collection notices sent by defendants, the assignment of the debt to Ocwen, and information communicated to CRAs. It is also not clear that Hines's collection-related claims are tied to HSBC's right to enforce the loan, as defendants assert. (See Defs. Mem. at 6.) Rather, plaintiff alleges that they arise from events that are independent from the transaction that was adjudicated in state court. As a result, res judicata does not bar Hines's collection-related claims. See Schuh v. Druckman & Sinel, L.L.P., 602 F. Supp. 2d 454, 467 (S.D.N.Y. 2009) (holding that even though state court issued judgment

17

of foreclosure, <u>res judicata</u> does not bar mortgagors' subsequent FDCPA claims arising from false statements in collection letters sent after conclusion of state court action).

Under the doctrine of collateral estoppel, "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." <u>Kremer v. Chem. Const. Corp.</u>, 456 U.S. 461, 466 n.6 (1982). "[A] federal court must apply the rules of collateral estoppel of the State in which the prior judgment was rendered." <u>Sullivan v. Gagnier</u>, 225 F.3d 161, 166 (2d Cir. 2000). Under New York law, the doctrine of collateral estoppel requires that "the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action." <u>Parker v. Blauvelt Volunteer Fire Co.</u>, 93 N.Y.2d 343, 349 (1999). Hines did not raise any collection-related facts, issues, or claims in the state court proceedings. "There is, moreover, no conceptual reason for them to have done so. Such claims challenge the method of debt collection, not the underlying debt. . . . Thus, a [state court] adjudication that plaintiffs are indebted to defendants would not preclude plaintiffs form claiming that defendants violated the FDCPA . . . ." <u>Fritz v. Resurgent Capital Servs., LP</u>, 955 F. Supp. 2d 163, 174–75 (E.D.N.Y. 2013). As a result, Hines's collection-related claims under the FDCPA are not precluded by the doctrine of collateral estoppel. <u>See</u> <u>id.</u> (holding that collateral estoppel does not bar FDCPA claims because plaintiffs did not raise those claims in the collection action against them in state court).

### D. False-Statement Claims Pursuant to Section 1692e

Defendants also contend that Hines's false-statement claims pursuant to section 1692e fail under Rule 12(b)(6). (Defs. Mem. at 9–11.) Section 1692e generally makes it unlawful for a debt collector to use "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In particular, section 1692e(2) prohibits the false

representation of "the character, amount, or legal status of any debt." Id. § 1692e(2). Defendants argue that Hines has failed to state a claim under § 1692e because the state court judgment provides for interest. (D.E. # 42-20 at 3.) As discussed above, Hines cannot challenge the legitimacy of the state court judgment, including its provision regarding interest. However, the amended complaint alleges that the collection letters include "unauthorized and improper interest and fees [that] do not correspond with the amount of interest indicated in the promissory note." (Am. Compl. ¶ 47.) It is therefore plausible that the "unauthorized" interest charges are greater than those permitted by the state court judgment. The Court therefore cannot conclude at this stage in the litigation that the state court judgment explicitly permits the statements in the collection letters regarding interest.

Defendants also argue that all of the purportedly unauthorized charges, fees, and interest included in the collection notices were, in fact, permitted by the mortgage loan. (Defs. Mem. at 9–10.) This argument is based on the terms of the mortgage note, which they contend can be considered on this motion to dismiss because "the mortgage loan is central to [Hines's] claims . . . ." (Id. at 10 n.3.) Because these fees, charges, and interest were all permitted by the mortgage note, defendants contend, the collection notices did not contain any false representation of the character or amount of the debt. (Id. at 10.)

To evaluate defendants' argument that Hines has failed to state claim under section 1692e, the Court must first decide whether it can consider and rely on the mortgage note at this stage in the litigation. "In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. Id. And even if not attached or incorporated

by reference, "a document 'upon which [the complaint] solely relies and which is integral to the complaint' may be considered by the court" in ruling on a motion to dismiss. Id. (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (alteration in original)). However, a "document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint." Williams v. City of New York, No. 14-CV-5123 (NRB), 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015).

Here, Hines did not attach the mortgage note as an exhibit to the amended complaint. The amended complaint also does not incorporate the mortgage note by reference; although the amended complaint makes three references to the mortgage note, (see Am. Compl. ¶¶ 27, 35, 47), "[a] mere passing reference or even references" to a document outside of the complaint "does not, on its own, incorporate the document into the complaint itself," Williams v. Time Warner Inc., 440 F. App'x 7, 8 (2d Cir. 2011); see also Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985) (limited quotation from material outside complaint does not constitute incorporation by reference). Furthermore, the mortgage note cannot be considered integral to the amended complaint because there is no indication that Hines relied on it in drafting the amended complaint. To the contrary, Hines's claims are largely based on defendants' actions to collect under the state court judgment. Although the mortgage note is relevant to Hines's amended complaint in this action, her claims do not "rel[y] heavily upon its terms and effect." Mangiafico, 471 F.3d at 398 (quoting Chambers, 282 F.3d at 153). Because the mortgage note is neither incorporated by reference nor integral to the amended complaint, the Court cannot consider it at the motion-to-dismiss stage. The Court consequently has no basis to conclude that defendants' collection notices did not, in fact, contain any false representation of the character or amount of the debt. The Court therefore rejects

20

defendants' motion to dismiss Hines's section 1692e claims on this ground. It is possible that, as defendants contend, these claims will ultimately amount to nothing more than veiled attempts to challenge the fees, interest, and expenses authorized by the mortgage note. That argument can be made in a summary judgment motion. The Court is unable to conclude as a matter of law at this stage of the litigation that Hines is not complaining of an independent violation.

### E. Materiality of Alleged False Statements

Defendants also move to dismiss Hines's false-statement claims because they contend she cannot show these representations were material. (Defs. Mem. at 12.) Although "[i]t is clear that Congress painted with a broad brush in the FDCPA," Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989), "not every technically false representation by a debt collector amounts to a violation of the FDCPA," Gabriele v. Am. Home Mortg. Servicing, Inc., 503 F. App'x 89, 94 (2d Cir. 2012). Courts in this Circuit evaluate claims under the FDCPA according to how the "least sophisticated consumer" would understand the communication. See Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010). "Additionally, several other circuit courts, as well as a number of district courts in this Circuit, read a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt." Gabriele, 503 F. App'x at 94 (listing cases); see also Fritz, 955 F. Supp. 2d at 170 ("Many courts have read a materiality requirement into § 1692e . . . The Second Circuit has not made an analogous pronouncement, but it did cite . . . cases with apparent approval in a recent summary order [Gabriele]. . . While Gabriele is not binding precedent, the Court agrees that only material misrepresentations are actionable under the FDCPA."). "Statements are materially false and misleading if they influence a consumer's decision or ability to pay or challenge a debt." Kassel

21

v. Univ. Fidelity LP, No. 13-CV-3756 (JS) (AKT), 2014 WL 824335, at *2 (E.D.N.Y. Mar. 3, 2014) (internal citation omitted).

Defendants contend that Hines's false-statement claims should be dismissed because she "cannot show that the representations in the monthly statements were in any way material to any decision she made or considered regarding payment or non-payment of debt." (Defs. Mem. at 12.) The Court finds this argument unpersuasive. Second Circuit case law "demonstrates that communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA." Gabriele, 503 F. App'x at 94. That case law also establishes that compliance with the FDCPA is assessed "from the perspective of the 'least sophisticated consumer.'" Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008) (quoting Clomon, 988 F.2d at 1318).

Applying these standards, the Court concludes that the alleged false and misleading statements were material. First, Hines claims the collection notices contained conflicting representations of the amount due on her debt, (Am. Compl. ¶ 50), and included false statements concerning the amount due and interest applied, (id. ¶¶ 47–51, 53–60, 71(f)). The FDCPA explicitly prohibits "false, deceptive, or misleading representation[s]" of "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e, so Hines's allegations that defendants sent her collection letters that falsely represented the amount of the debt clearly fall within the scope of the statutory prohibition. Hines also claims that the collection letters contained "false, misleading, and deceptive statements regarding the alleged creditor . . . ." (Am. Compl. ¶ 71(b).) As other courts in this Circuit have found, this type of misrepresentation is material because representations concerning "[t]he entity to which a debtor owes money potentially affects the debtor in the most

22

basic ways, such as what the debtor should write after 'pay to the order of' on the payment check to ensure that the debt is satisfied." Eun Joo Lee v. Forster & Garbus LLP, 926 F. Supp. 2d 482, 488 (E.D.N.Y. 2013). Defendants' contention that the alleged false and misleading statements concerning Hines's creditor were immaterial is thus without merit.[6] See Fritz v. Resurgent Capital Servs., LP, 955 F. Supp. 2d 163, 170–71 (E.D.N.Y. 2013) (holding that the false representation concerning the owner of a debt is material); Eun Joo Lee, 926 F. Supp. 2d at 488 (same). The alleged false statements were thus material, and the Court accordingly denies defendants' motion to dismiss the false-statement claims.

***

For these reasons, the Court concludes that because Hines's notice-of-dispute claim was untimely, Hines has failed to state a claim on which relief may be granted and that claim is dismissed.

The Court concludes, however, that Hines has plausibly alleged the following false-statement claims under the FDCPA and denies defendants' motion to dismiss these claims under Rule 12(b)(6): (1) defendants sent collection notices with conflicting representations of the amount due, (id. ¶ 50); (2) defendants sent collection notices containing unauthorized fees and charges to the outstanding principal balance and amount due, (id. ¶¶ 47–51), particularly charges for unauthorized hazard insurance for her home, (id. ¶¶ 53–58, 71(e)), and unauthorized charges for the notice of foreclosure sale, (id. ¶¶ 59–60); (3) defendants sent collection notices charging interest in an amount different from that provided in the promissory note to the outstanding

---

[6] As discussed above, the Rooker-Feldman doctrine bars Hines's claims that challenge HSBC's status as a creditor. Therefore, Hines could not bring a false-statement claim on the grounds that the collection letters identified HSBC as the creditor. Because the allegation in Hines's complaint is more broad—she states that the collection letters contained "false, misleading, and deceptive statements regarding the alleged creditor," (Am. Compl. ¶ 71(b))—it could encompass other false statements that would be material. Defendants did not move to dismiss this claim as conclusory and lacking specificity.

principal balance and amount due, (id. ¶ 71(f)); and (4) defendants sent collection notices that made false, misleading, and deceptive statements regarding the creditor, (id. ¶ 71(b)). Furthermore, because defendants did not specifically address these claims in their memorandum of law in support of their motion to dismiss, the following two FDCPA claims may proceed: (1) Hines's claim that defendants provided false information to CRAs regarding the amount of Hines's debt; and (2) Hines's claim that HSBC's assignment of Hines's mortgage loan to Ocwen without Hines's consent or authority from a court of competent jurisdiction violated section 1692c.[7]

## III.    Intentional and Negligent Infliction of Emotional Distress

Defendants move to dismiss Hines's IIED claim under Rule 12(b)(6) for failure to state a claim. In order to plead a claim of IIED under New York law, a plaintiff must plead the following four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (citing Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993)). The "outrageousness element" is "most susceptible to determination as a matter of law." Howell, 81 N.Y.2d at 121. Here, the only facts pleaded in support of Hines's IIED claim are that "[t]he actions of Defendants . . . have resulted in Ms. Hines being threatened with the sale of [her] Property" and that defendants did not have any right to do so. (Am. Compl. ¶¶ 80–82.) This allegation is legally deficient because, as discussed above, the New York Supreme Court has already determined that defendants have a legal right to foreclose. As a result, the complaint fails to plausibly allege

---

[7] Defendants address Hines's § 1692c claim for their first time in their reply memorandum of law and argue that Hines has failed to state a claim under § 1692c. (See D.E. # 42-20 at 5 n.3.) However, the law in this Circuit is clear that arguments raised for the first time in reply briefs need not be considered. See, e.g., EDP Med. Comuter Sys., Inc. v. United States, 480 F.3d 621, 625 n.1 (2d Cir. 2007); Cotona v. Fed. Bureau of Prisons, No. 13-CV-609 (JMF), 2013 WL 5526238, at *2 (S.D.N.Y. Oct. 7, 2013) ("[A]rguments raised for the first time in a reply memorandum are waived and need not be considered.").

extreme and outrageous conduct on the part of defendants. See Best v. Bank of Am., N.A., No. 14-CV-6546 (JG) (LB), 2015 WL 5124463, at *8 (E.D.N.Y. Sept. 1, 2015) (IIED allegation is legally deficient because New York Supreme Court already determined that defendant had a legal right to foreclose).

Defendants also argue Hines's NIED claim should be dismissed for failure to state a claim. "A cause of action to recover damages for negligent infliction of emotional distress generally requires a plaintiff to show a breach of a duty owed to him which unreasonably endangered his physical safety, or caused him to fear for his own safety." Sacino v. Warwick Valley Cent. Sch. Dist., 29 N.Y.S.3d 57, 60 (2d Dep't 2016). Hines claims that defendants threatened to sell her property "without any right or privilege" to do so and accordingly are liable for NIED. (Am. Compl. ¶¶ 85–90.) This claim fails, however, because defendants, as mortgage servicers, owe no duty of care to Hines, the borrower. See Best, 2015 WL 5124463, at *7 ("[T]he negligence claim is subject to dismissal because a mortgage servicer owes no duty of care to a borrower . . . ."); see also Abraham v. Am. Home Mortg. Servicing, Inc., 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013) ("It is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties."). Because Hines has failed to plead that defendants owed her a duty, she has failed to plead a necessary element of an NIED claim. The Court accordingly grants defendants' motion to dismiss Hines's NIED claim for failure to state a claim.

## IV.    RESPA Claims

Finally, defendants move to dismiss Hines's RESPA claim. Hines claims that defendants failed to comply with the requirements for charging a borrower for force-placed insurance that are

established by RESPA and its implementing regulations.[8] (Am. Compl. ¶¶ 90–98.) Section 2605 of RESPA establishes requirements for mortgage services in obtaining force-placed insurance, <u>see</u> 15 U.S.C. § 2605(k)–(m), and an individual plaintiff can bring a claim for violations of section 2605, <u>see id.</u> § 2605(f)(1). "To survive a motion to dismiss, a plaintiff bringing a Section 2605 claim must, in addition to showing defendant's failure to comply with the provisions of Section 2605, identify damages that he or she sustained as a result of defendant's alleged violation(s)." <u>Kapsis v. Am. Home Mortg. Servicing Inc.</u>, 923 F. Supp. 2d 430, 444 (E.D.N.Y. 2013). Specifically, to state a § 2605 claim, a plaintiff "must sufficiently allege one of two types of damages: (1) 'actual damages to the borrower as a result of the failure' to comply with § 2605; or (2) statutory damages 'in the case of a pattern or practice of noncompliance with the requirements' of § 2605." <u>Gorbaty v. Wells Fargo Bank, N.A.</u>, No. 10-CV-3291 (NGG) (SMG), 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012) (quoting 12 U.S.C. § 2605(f)). In her amended complaint, Hines merely states that she seeks "statutory damages" and "actual damages" for her RESPA claim, but provides no factual allegations or support for these damages. (Am. Compl. at 19.) However, "[a] conclusory assertion that the plaintiff merely suffered 'damages' is insufficient to state a claim under RESPA." <u>Yanes v. Ocwen Loan Servicing, LLC</u>, No. 13-CV-2343 (JS) (ARL), 2015 WL 631962, at *7 (E.D.N.Y. Feb. 12, 2015). Hines does not sufficiently allege how defendants' failure to comply with RESPA's requirements for force-placed insurance proximately caused her damages, so she has failed to state a claim under section 2605. <u>See id.</u> The Court accordingly grants defendants' motion to dismiss Hines's RESPA claim.

---

[8] In her amended complaint, Hines characterizes her claim as arising under RESPA's implementing regulation, 12 C.F.R. § 1024.37. (Am. Compl. ¶¶ 90–98.) However, this regulation does not contain a private right of action for damages. In Hines's opposition to defendants' motion to dismiss, she re-characterizes her claim as also arising under both § 2605 of RESPA, which does contain a private right of action. (<u>See</u> D.E. # 42-13 at 18.) The Court therefore construes Hines's claim as arising under that provision of RESPA.

## CONCLUSION

For these reasons, the Court grants defendants' motion to dismiss Hines's foreclosure-related claims, notice of dispute claim, IIED claim, NIED claim, and RESPA claims. The Court denies the motion with respect to Hines's remaining claims.

     SO ORDERED.

Dated: September 30, 2016
      Brooklyn, New York

Carol Bagley Amon
United States District Judge